UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON, MASSACHUSETTS

| | |
|---|---|
| THE M.D. MANAGEMENT CO., LLC, (Petitioner) ADRIAN E. LEPEDEANU, (Beneficiary, ) MARIANA LEPEDEANU (Spouse,) R. L. (Child, ),<br>    Plaintiffs<br><br>vs.<br><br>DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP & IMMIGRATION SERVICES, JOHN ASHCROFT, United States Attorney General, TOM RIDGE, Secretary, DHS, and PAUL E. NOVAK, Director, Vermont Service Center,<br>    Defendants | Civil Action No.<br>04 10499 RWZ |

## PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT SUMMARY

Plaintiffs brought this case to obtain judicial review of the Defendants' revocation of the H-1B petition filed by M.D. Management for Mr. Adrian Lepedeanu. The Defendants claim that the position of Food Service Manager at M.D. Management is not a specialty occupation which requires a bachelors degree or equivalent.

Common sense and business reality dictate that an employer would not hire a manager to manage a $2.4 million restaurant business with 95 employees unless that person had a bachelors degree or equivalent in the field. The fact that the restaurants are McDonald's franchises that serve fast food does not negate the complexity of the managerial task in a business of that scale.

1

The evidence in the record shows that the position is a specialty occupation which meets the H-1B definition.

## STATEMENT OF FACTS

For the past ten years, M.D. Management Co. through its husband and wife principals, has operated two McDonald's franchises in the Boston area. Its operation runs three shifts per day, seven days per week. The M.D. Management Co. has over 95 people on its payroll and annual gross receipts of over $4.0 million with its gross income over $2.4 million (A.R. 0134-0138, 0098). For the past three years, the husband and wife principals, David and Marilyn Yee, have been the Food Service/General Managers.

M.D. Management filed this H-1B petition for Mr. Adrain Lepedeanu to work as Food Service Manager. As described in the supporting letter of David Yee (A.R.0106-0108), the Food Service Manager would be responsible for all operations of the franchise; hiring, firing, and training of personnel; food quality; financial transactions and budget matters. The responsibilities include supervising other shift managers, production managers, service managers and staff.

In order to establish that the position was a specialty occupation, the Plaintiffs submitted expert opinion letters to show the industry standard, proof of recruitment efforts, documentation about prior employee managers and detailed examples of financial and other reports required of the manager. This evidence is discussed below.

Mr. Adrian Lepedeanu himself has the equivalent of a Bachelor's degree in Restaurant, Culinary and Catering Management. (A.R. 0141.) His professional credentials have never been disputed by the Defendants.

## HISTORY OF THE CASE

On July 24, 2002 the Plaintiffs filed the H-1B petition which is the subject of this appeal. That petition was filed by the M.D. Management Co. on behalf of Mr. Adrian Lepedeanu. (A.R. 0097-0182, index at 0100.). A Request For Evidence was issued on August 2, 2002. (A.R. 0183) Plaintiffs filed a response on August 29, 2002, (A.R. 0187- 0206) The Service approved the Petition on September 6, 2002. (Copy missing from A.R., attached here as Exhibit A)

On September 24, 2002, the Service issued a Notice of Intention (NOI) to revoke the H-1B status it had granted the Plaintiffs. (A.R. 0015).

The Plaintiffs timely filed a response to the NOI on October 22, 2002. (A.R. 0016-0096.) On December 23, 2002, INS revoked the previously granted petition. (A.R. 0013) The Plaintiffs filed an appeal to the Administrative Appeals Office (AAO) on January 17, 2003. (A.R. 011, 0208-0308) The AAO denied the Plaintiffs' appeal on January 6, 2004 (A.R. 0002-0010.) The Plaintiffs' then brought this action in district court. On June 25, 2004, the Defendants reissued their decision denying the Plaintiffs' H-1B petition. (A.R. 0309-0319)

3

## JURISDICTION

The Administrative Procedure Act (APA) and the Immigration and Nationality Act (INA) are federal statutes and are, therefore, covered by 28 USC Section 1331. Section 1331 vests district courts with jurisdiction to hear cases "arising under the Constitution, laws, and treaties of the United States." Federal question jurisdiction has been frequently utilized to review immigration cases in federal courts, including denials of H-1B classification.

The central jurisdictional issue here is whether this court retains jurisdiction to review this H-1B revocation despite the jurisdictional limitations which were added to the immigration law in 1996. Those provisions were enacted in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) and generally limit judicial review of denials of discretionary relief in deportation cases. Numerous courts such as those cited below, have discussed the scope of the jurisdictional limitations of §306 of IIRAIRA and the majority have held that these amendments do not preclude judicial review in a case like this. Section 306 of IIRAIRA was codified in section 242 of the Immigration and Nationality Act, specifically 8 USC 1252(a)(2)(B)(ii). This section of the statute states:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review ....(ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

8 USC 1252(a)(2)(B)(ii).

In short, this section does not bar jurisdiction in this case because the decision on appeal is a determination of statutory eligibility rather than an exercise of discretion. In this case, the Defendants revoked Plaintiffs' H-1B petition on the grounds that they had not shown that the position of Food Service Manger was a specialty occupation as required for H-1B classification. This is a legal determination, a question of application of the law to the facts, not a denial in the exercise of discretion. Moreover, this case is not in the context of removal or deportation.

Numerous federal courts have considered the applicability of the jurisdictional limitations of IIRAIRA. Three circuits and some district courts have taken an expansive view of these jurisdictional limitations. El-Khader v. Monica, F.3d___, 2004 W.L.909161 (7th Cir. April 29, 2004) (holding revocation of immigrant visa petition due to the prior marriage fraud was a discretionary decision and not reviewable) and Samirah v. O'Connell, 335 F.3rd 545 (7th Cir. 2003); (holding the revocation of parole discretionary and not subject to review), CDI Information Services, Inc. v. Reno, 278 F.3rd 616 (6th Cir 2002) (finding lack of subject matter jurisdiction to review an H-1B extension); Van Dinh v. Reno, 197 F.3d 427 (10th Cir. 1999) (finding district court lacked jurisdiction in Bivens class action challenging transfer to other detention facility); and Systronics Corp. v. INS, 153 F.Supp. 2d 7 (D.D.C. 2001) (finding no jurisdiction to review denial of an immigrant visa petition.)

However most courts have found that these court stripping provisions were intended to apply to discretionary relief from removal and have declined to find that Congress intended to divest federal courts of jurisdiction over all discretionary decisions of the Attorney General. See for example, Ballegamba v. Ashcroft, ___F.3d ___ W.L. 32255975 (11th Cir. 2002) (holding that

5

the District Court did have jurisdiction to review a question of statutory eligibility even in the context of an application for discretionary relief); Montero-Martinez v. Ashcroft, 277 F.3d 1137 (9th Cir. 2002) (finding Court of Appeals still had jurisdiction to review issue of statutory eligibility despite IIRAIRA.); Talwar v. INS, __F.Supp.2d __ 2001 WL 767018 (S.D.N.Y. 2001) (finding subject matter jurisdiction to review denial of national interest waiver but letting denial stand on the merits; good analysis of jurisdictional issue); Burger v. McElroy, 1999 WL 2003353 (S.D.N.Y. 1999)(finding subject matter jurisdiction to review denial of family based visa petition, but finding for INS on the merits since petitioner died.); Nyaga v. Ashcroft, 186 F.Supp. 2d 1244, (N.D. Ga 2002) (finding jurisdiction in mandamus action to compel adjudication.)

Although the First Circuit has not addressed this issue precisely, it has addressed the parameters of the court stripping provisions of the Illegal Immigration and Immigrant Responsibility Act (IIRAIRA.) This Circuit has distinguished between agency determinations of objective facts which are generally reviewable and those which are committed to agency discretion which may not be reviewable. See Bernal-Vallejo v. INS, 195 F.3d 56 (1st Cir. 1999); Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998) and Kamara v. Farquharson, 2 F.Supp. 2d 81 (D. Mass 1998.)

In Bernal-Vallejo, supra the First Circuit considered a denial of suspension of deportation under former 8 USC 1254 (a)(1) (1994 Ed.). The Court found that issues such as whether the alien had established the requisite continuous physical presence or whether the spouse was or was not a citizen were non-discretionary questions of fact which remained reviewable despite the

newly enacted jurisdictional limitations of IIRAIRA.

On the other hand, purely discretionary determination such as the degree of extreme hardship were not reviewable. In essence, the First Circuit recognized that

> "Some component of decisions, made under the enumerated sections are not committed to agency discretion but are instead determinations of objective facts. Where a decision rests on these later grounds, review is not precluded by 309(c)(4)(E).

Bernal-Vallejo, 195 F.3d at 60. (This cite is to the transitional rules of IIRAIRA rather than the permanent rules which control the instant case. However, the principal is the same.)

In Goncalves v. Reno, 144 F.3d 110, the First Circuit again refused to interpret statutory changes in IIRAIRA as repealing federal court jurisdiction. Although Goncalves involves a different jurisdiction limiting provision under the transitional rules, the rationale is applicable here. The Court again emphasized that questions of statutory eligibility remain reviewable (in that case through habeas actions in the district court), despite the jurisdictional limitations on questions of discretion. Goncalves, supra at 125. See also Kamara v. Faquharson 2 F.Supp.2d 81 (D. Ma. 1998) (holding that 8 USC 1252(g) did not preclude judicial review of a no-bond decision, but finding no abuse of discretion.)

Although none of these First Circuit decisions is on point (and two deal with the transitional rules, rather than the final rules of IIRAIRA), all three decisions employ the same analysis. All three distinguish between legal determination of statutory eligibility which are subject to judicial review and discretionary determinations which are not. In Tapis International

v. INS, 94 F.Supp. 2d 172 (D.Ma. 2000), this district court decided a case which is remarkably similar to the instant case. In Tapis, the court found that INS had abused its discretion by denying H-1B status to a manager of an interior design business. The Tapis court focused on the definition of specialty occupation in 8 CFR 214.2(h)(4)(iii)(A) and overturned the H-1B denial because INS has failed to follow its own regulations. Those are precisely the same regulations which form the basis of the denial in the instant case. Moreover, Plaintiffs here argue, as did the Plaintiffs in Tapis, that their managerial position is a speciality occupation because it requires a bachelors degree or the equivalent of a specialized bachelor's degree.

In Tapis, 94 F. Supp. 2d at 175, the court distinguished Shanti v Reno, 36 F. Supp. 2d 1151 (D.Minn 1998) which had denied an H-1B for a restaurant manager. The Shanti decision explained why the jurisdictional limitations of 8 U.S.C. 1252 are not applicable to the review of a denial of an H-1B petition. Citing the First Circuit decision in Goncalves, supra, the Shanti court stressed that :

> "Well established canons of statutory interpretation disfavor repeal of jurisdictional provisions by implication and require that restrictions on jurisdiction be construed narrowly".

Shanti, supra at 1159.

The Court in Shanti found that the jurisdictional limitations which were added to the statute in section 1252(a)(2)(B) [by IIRAIRA] do not eliminate general federal question jurisdiction under 28 USC 1331. Similarly, in Evangelical Lutheran Church in America v. INS, 288 F. Supp.2d 32 (D.D.C. 2003), the court carefully reviewed the legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act as well as jurisdictional

8

arguments on both sides. Absent clear indication of Congressional intent, the court declined to find that the jurisdictional limitations in section 1252 (a)(2)(B)(ii) precluded judicial review of denial of an H-1B extension.

In Evangelical Lutheran Church, supra, the court cited the Administrative Procedure Act and the presumption in favor of judicial review and applied the limitations to review of decisions in which there are no judicially manageable standards. In the instant case, there are judicially manageable standards which are spelled out in the regulations as the tests for specialty occupation. (8 CFR 214.2 (h)(4)(iii)(A)) and the grounds for revocation. (8 CFR 214.2(h)(II)(iii). )

The court in Mart v. INS, 94 F. Supp 2d 1120 (D. Ore. 2000) carefully analyzed the legislative history and found that the limitations on circuit court review were permissible because the district court existed as an alternative. However, if these jurisdictional restrictions were applicable to the district court, there would be no alternative forum for review.

## RIGHT OF REVIEW

The APA Section 701 et seq. provides for judicial review of final agency actions for which there is no adequate remedy in court and the review of which has either been expressly authorized or has not otherwise been precluded by statute. For the reasons explained above, review of an H-1B revocation has not been precluded by statute, specifically by IIRIRA. Furthermore, the agency

action at issue has <u>not</u> been committed to the agency discretion by law within the meaning of 5 U.S.C. §701(a)(2).

The Supreme Court interpreted APA Section 701(a)(2) and held that *committed to agency discretion* "is a very narrow exception" and found that "the legislative history of the Administrative Procedure indicates that it is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 410 (1971). (Citing S. Rep. No. 752, 75th Cong., 1st Sess., 26 (1945). See <u>Shanti</u>, 36 F. Supp.2d 1151, 1559.

The Courts have on numerous occasions reviewed and where appropriate, set aside INS's denials of H-1B petitions: <u>Tapis v. INS</u>, 94 F.Supp.2d 172 (D. Mass. 200); <u>Shanti v. Reno</u>, 36 F. Supp.2d 1151 (D. Minn. 1998); <u>Cutler v. Ilchert</u> 1985 U.S. Dist LEXIS 18925 (N.D. Cal. 1985); <u>The Young China Daily</u>, 742 F.Supp. 552 (N.D. Cal. 1989); <u>Immediate Business Systems, Inc. v. Richard</u>, 645 F. Supp. 355 (N.D. Ga. 1986); <u>Hong Kong TV Video Program Inc. v. Ilchert</u>, 685 F.Supp. 712 (N.D. Cal.1998); <u>Full Gospel Portland Church v. Thornburgh</u>, 730 F. Supp. 411 (D.D.C. 1988); <u>Globnet, Inc. v. Attorney General</u>, Civ. A. No. 88-1261, 1989, U.S. Dist. LEXIS 7154 (D.D.C. January 10, 1989); <u>Safer, Inc. v. United States Immigration and Naturalization Service</u>, CA Co. 3-87-2761-R, 1989 U.S. Dist. LEXIS 6514 (N.D. Tex. 1989); <u>Omni Packaging, Inc. v. United States Immigration and Naturalization Services</u>, 733 F. Supp. 500; <u>Arctic Catering, Inc, v. Thornburgh, 769 F.Supp. 1167</u> (D. Colo. 1991).

## SCOPE OF REVIEW

The reviewing court may set aside an agency's decision if the decision is unsupported by reasonable, substantial evidence on the record considered as a whole. Bowman Transportation, Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 441 (1974).

Even if there is substantial evidence to support agency finding, the court may set the decision aside if it finds that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" within the meaning of 5 U.S.C. Section 706(2)(A). Tapis v. INS, 94 F. Supp.2d 172 (D.Mass 2000); Omni Packaging v. INS, 733 F. Supp. 500, 502 (citing Bowman Transportation, Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 285 (1974).)

Furthermore, courts held that the review is to be based on the whole record and that *post hoc* rationalization for the decision will be inadequate and "must be viewed critically". Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402; Omni Packaging 733 F.Supp. 500, 502. (Please see Plaintiffs' argument on past hoc rationalization in Plaintiffs' memorandum in support of their opposition to Defendant's Motion for stay, here incorporated by reference.)

## STANDING

In cases challenging the denial of immigrant or nonimmigrant visa petitions both the petitioning employer and the alien beneficiary have been found to fall withing the ambits of the phrase "a person ...adversely affected or aggrieved" and both had standing to challenge the agency's

11

denial of visa in the District Court under the APA §701 et seq. <u>See</u> for example, <u>Ghaly v. INS</u> (holding that the alien has standing to challenge INS's denial of an employer's visa petition because he was within the zone of interest regulated or protected by the relevant statute) 48 F.3d 1426, 1434 n. 6 (7th Cir. 1995.)

The Plaintiffs in this case are adversely affected by the Defendants' revocation of the employer's nonimmigrant petition. They have suffered a concrete injury which is traceable to the agency's decision. This can be remedied by this court setting aside the unfavorable decision and directing the Defendants to approve M.D.'s petition granting H-1B classification to Mr. Lepedeanu and H-4 classification to his dependents as of September 6, 2002. (The date they were originally granted.) This is precisely the relief which was granted by this district court in <u>Tapis v. INS</u>, 94 F. Supp.2d 1151 (D.Mass 2000).

## ARGUMENT

I. **THE PLAINTIFFS HAVE MET THE CRITERIA FOR SPECIALTY OCCUPATION BY SHOWING THAT A BACHELOR'S DEGREE OR EQUIVALENT IS REQUIRED FOR THIS MANAGERIAL POSITION.**

It is undisputed that in order to qualify for H-1B status the position must be a "specialty occupation" as defined in section 214(i) of the Immigration and Nationality Act (8 USC 1184 (i)) and INS regulations (8 CFR 214.2 (h)(4)(iii)(A)). The regulations (8 CFR 214.2 (h)(iii)(A)) list four different criteria or tests for a specialty occupation. To obtain H-1B status, an employer need only

12

satisfy **one** of the four criteria. The four criteria are:

1. A baccalaureate or higher degree or its **equivalent** is normally the minimum requirement for entry into the particular position;

2. The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

3. The employer normally requires a degree or its **equivalent** for the position; or

4. The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

[Emphasis added] 8 CFR 214.2 (h)(iii)(A).

A careful look at each of the four regulatory standards shows that the Defendant acted arbitrarily and capriciously when it concluded that the Defendants had not met **any** of the four criteria. (A.R. 0210-0215 and supporting documents at 0190-0308 indexed at 0218.) Two of the four H-1B criteria specifically recognize a degree "or its equivalent." (8 CFR 214.2 (h)(iii)(A)(1) and (3).)

The complexity of the job duties has always been one of the key factors. In Hong Kong T.V. Video Program, Inc. v. Ilchert, 685 F. Supp. 712 (N.D. Cal. 1988) the INS denied the petitioner's H-1B petition for its president and chief executive officer on the grounds that the position did not require a bachelors degree and was therefore not a professional position. The

13

district court reviewed the definition "profession" (which at that time was used in lieu of "specialty occupation").[6] The court looked to the INS administrative decision Matter of Sun, 12 I&N Dec. 535 (Reg. Comm. 1967) in which INS held that the vocation of hotel manager was a profession based upon the complexity of job duties. (Matter of Sun, attached for convenience as Exhibit B.)

The INS concluded that the complex duties of personnel administration, establishing performance standards, allocating funds, planning budgets, authorizing expenditures, delegating authority, controlling and supervising performance of personnel, and insuring efficient and profitable operation of the hotel raised the occupation of hotel manager to a profession. Hong Kong TV at 716. Similarly the district court found the position of company president to be a profession based on the "complexity of duties" involved. The same is true in the instant case where the position involves all of the same duties discussed in Sun and Hong Kong T.V. Video, supra.

To determine the professional nature of a job, the adjudicator must look beyond the job title to the duties. The Defendants concede this in both of the AAO opinions. (A.R. at 0004 and 0311) Yet, in the instant case, the Defendant's gave short shrift to the evidence of the complex nature of Mr. Lepedeanu's job duties and to the scope of the business he manages. M.D. Management itemized Mr. Lepedeanu's job duties (A.R. 0106-0108) and submitted copies of the numerous

---

[6] The category and definition of "specialty occupation" were added to the statute in 1990, but they have their roots in the administrative interpretation of the category "professional" under prior law. Speaking generally, prior to the Immigration Act of 1990, an employer could seek an H-1 nonimmigrant visa or a third preference immigrant visa for a position if "attainment of a baccalaureate degree is usually the minimum requirement for entry into the occupation." See INS 1040-89 (January 5, 1990), 55 FR 2606, 2608-2610 (January 26, 1990), amending 8 CFR § 214.2 (h)(3). Again speaking generally, the 1990 amendments enacted specific statutory language to overrule certain offshoots of this doctrine, but did not affect the rules applicable to the instant petition. See INS 1417-91 (April 1, 1991), 56 FR 31553, 31554 (July 11, 1991).

reports which the Food Service Manger must complete. (A.R. 0019-0021 and 0045-0096). A close look at each of these duties and reports show that they would be difficult if not impossible to perform without the required degree or equivalent in restaurant management or a related field.

Here Mr. Lepedeanu has a the functional equivalent of a bachelors degree in Restaurant Management. In <u>Shanti</u> the court upheld INS's denial of H-1B status to a restaurant manager who was unable to demonstrate that the position met any of the four criteria for specialty occupation in 8 CFR 214.2 (h) (4) (iii) (A). 36 F.Supp. 2d. 1150. Specifically, the restaurant in <u>Shanti</u> failed to submit proof that a bachelors degree was the industry standard requirement. The documentation found lacking in <u>Shanti</u>: job advertisements in newspapers and job descriptions is precisely the sort of documentation submitted by Petitioner in the instant case.

The individual in <u>Shanti</u> had a degree in business administration and nothing more. She had no expertise in restaurant management. She lacked the "specialized experience." In contrast, the Plaintiff in this case, Adrian Lepedeanu, not only has the functional equivalent of a bachelors degree in Restaurant, Culinary and Catering Management, but several years specialized experience in the field. (A.R. 0141)

This court previously considered the definition of professional in a slightly different context. In <u>Augat Inc. v. Tabor</u>, 719 F. Supp. 1158 (D. Mass, 1989) this court reversed the INS denial of an immigrant visa petition on the grounds that the company vice president was not a member of the professions because he lacked a bachelors degree and that the position was not professional because it did not require a bachelors degree. Note that although the employer in <u>Augat</u> had filed an

15

immigrant petition for permanent immigration rather than a nonimmigrant petition for temporary H-1B employment, the reasoning is analogous to the instant case for the reasons given in <u>Shanti</u> (that the standards are substantially similar.) <u>Shanti</u> 36 F. Supp. 2d at 1163-1164.

In <u>Augat</u> the court looked to the complexity of the job duties and evidence in the record including an expert opinion that the position was a professional one which would ordinarily require a bachelors degree in business administration. The <u>Augat</u> court granted the employer summary judgment. The court reasoned that the Defendant had submitted no evidence to counter or discredit the Plaintiff's assessments and descriptions of the position. In the absence of such contradictory evidence, the agency was not free to disregard the fact that all the evidence in the record supports the conclusion that the position at issue is a professional one. <u>Augat</u>, 719 F. Supp. 1158, 1162.

Similarly in this case, the Defendants have submitted no evidence to counter Plaintiffs' other than citing the Occupational Outlook Handbook which concedes that:

> a bachelor's degree in restaurant and food service management provides strong preparation for a career in this occupation. Candidates are recruited, however, from two and four year college hospitality management programs, as-well as from technical institutes and other institutions offering programs leading to associates degrees or other formal certification.

(A.R. at 0008 and 0315). This does not contradict or discredit Plaintiffs' evidence since Plaintiffs argue that the **equivalent** of a bachelors degree in Restaurant Management is required. Thus those with two year degrees achieve the equivalent of a bachelors degrees with industry experience like Mr. Lepedeanu himself and Mrs. Yee.

The documentation submitted by M.D. Management from experts in the hospitality industry attests to the professional nature of the job and the requirement of a bachelors degree or equivalent

16

as an industry standard, (A.R. 0167-0179) Dean Hadgis, in his supplemental report, cited the Guide to College Programs in Culinary Arts, Hospitality & Tourism and attached an excerpt. (A.R. 0041) He emphasized that there are four (4) tiers separating the positions of Management Trainee from the position of Manager. He explained that the position in the instant case is on the fourth tier of Food Service Manager/General Manager; not a Management Trainee. He concluded that this particular job carries responsibilities that clearly require a baccalaureate or higher degree in hotel and restaurant management. (A.R. 0039-0041)

Professor Stefanelli also submitted a supplemental report in which he explained:

> McDonald's, like many companies in food service, has to under-hire now and again. While the preference is a 4-year degree, realistically there are not enough of these folks to go around. So they take what's available and groom them. This is why the typical general manager has the **equivalent** of a 4-year degree.

[Emphasis added] (A.R. 0042-004)

These expert letters point to a shortage of qualified candidates with specialized degrees. As a result of this shortage, employers may have to hire candidates without degrees and train them until they have the equivalent of such a degree. The industry shortage does not negate the specialty nature of the job. This shortage is being addressed by the tremendous growth in schools which offer degrees in restaurant management. Dean Hadgis explains this and attributes this to growth (from 40 schools in the 1970's to over 200 today) to a "response to the growing demands of the industry". (A.R. 0039) This is precisely the sort of evidence of industry standard that the regulations recognize as one of the four criteria of specialty occupation. (8 CFR 214. (h)(4)(iii)(A)(2))

II. **DEFENDANTS FAILED TO CAREFULLY CONSIDER THE EVIDENCE PRESENTED AND ITS NOTICE OF INTENT TO REVOKE IS DEFECTIVE AND NOT CURED BY THE POST HOC RATIONALIZATION OF ITS RE-WRITTEN**

**DECISION.**

Here, Defendants have failed to follow their own regulations (8 CFR 214.2 (h) (4) (iii) (A) and attempt to justify that (after the fact) by arguing that the initial H-1B approval was "gross error." (A.R.0316). In so doing, the agency commits the mistake of "Post hoc" rationalization criticized by the Supreme Court in Overton Park *supra* and fails to evaluate the evidence presented in light of the explicit written requirements in its own regulations.

The Plaintiffs provided evidence of the educational background or experience equivalence of the individuals who served in this position during the their ownership of the business. They included the principal's Bachelor's Degree, his wife's extensive experience of thirty seventy years in the hospitality industry, and the employment jackets of prior food service managers/general managers, all of whom had a Bachelor's Degree (A.R.0032-36). Thus the M.D. Management, has required a bachelors degree for this position since 1993. This is not a requirement derived from convenience, rather from necessity, caused by the complexity of doing business today.

The regulations which govern revocation of an H-1B petition appear at 8 CFR 214.2(h)(II)(iii)(A). Although not cited in the original AAO decision (A.R. 003-0010) the re-written decision (A.R.0309-0319) states that "to properly revoke the approval of a petition, the director must issue a notice of statement of the grounds for revocation. 8 CFR 214.2(h)(II)(iii)(B). (A.R. at 0316)

The one-page notice of intent to revoke (A.R. 0015) contains one paragraph which states the only specific reason for revocation; that the employer's spouse, Mrs. Yee had an associates degree. In rebuttal, the Plaintiff's submitted evidence that Mrs. Yee has 37 years experience in the

18

restaurant industry and cited the three-for-one-rule by which specialized experience is considered equivalent to a bachelor degree. 8 CFR 214.2(h)(4)(iii)(D)(5).) Even if Mrs. Yee didn't have the equivalent of a bachelors degree, this alone is not sufficient grounds to revoke since Plaintiffs need meet only one of the four tests in 8 CFR 214.2 (h)(iii)(A).

The two expert opinions describe an industry which has evolved to the point that the position of restaurant manager requires a bachelors degree in a related field. But a shortage of degreed candidates have led employers to improvise and adapt by hiring some people without the degree and training them until they have the equivalent. Immigration regulations have long recognized that a combination of education and experience may be equivalent to a bachelors degree and therefore acceptable in H-1B cases. 8 CFR 214.3 (h)(2)(4)(iii)(D)(5).

The value of the business of M.D. Management has thrived under Mr. Lepedeanu's management. The tax documents (A.R. 0314-0137) show gross receipts of over $3 million for three consecutive years (1999-2001) and gross income over $2 million for each year. These figures reflect the scale, level of responsibility and complexity inherent in the job duties of this Food Service Manager.

The H-1B approval was no mistake or "gross error". It was consistent with the law then and is consistent with the law now. A review of the caselaw discussed above shows that the initial approval of this H-1B was consistent with other H-1B approvals for managerial jobs. Defendants cannot excuse their inconsistency simply be labeling it a "gross error" after the fact.

## CONCLUSION

The Defendants have shown that a bachelors degree or equivalent is normally required by this employer, by this industry and by the complexity and scale of this job. For the reasons stated above, the revocation of H-1B status to the Plaintiffs is arbitrary and capricious and not supported by substantial evidence. Thus they request that the H-1B petition be granted, that Mr. Lepedeanu be restored to H-1B status and his spouse and child to H-4 status as of September 6, 2002.

Respectfully submitted

7/21/04
Date

Counsel for the Plaintiffs
Maureen O'Sullivan
Kaplan, O'Sullivan & Friedman
10 Winthrop Sq., 3rd Floor
Boston, MA 02110