UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE MD MANAGEMENT CO., LLC,<br>　　　　Petitioner,<br><br>ADRIAN LEPEDEANU,<br>　　　　Beneficiary,<br><br>MARIANA LEPEDEANU,<br>　　　　Dependent, Spouse,<br><br>R.L.,<br>　　　　Dependent, Child,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, CITIZENSHIP AND<br>IMMIGRATION SERVICES,<br><br>　　　　Defendant. | Civil Action No. 04-10499-RWZ |

### DEFENDANT'S OPPOSITION
### TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant hereby responds to Plaintiffs' Motion for Summary Judgment. As set forth below, this Court lacks subject matter jurisdiction over Plaintiffs' claims. Even if this Court has jurisdiction, the agency decision must be accorded vast deference, and the arbitrary and capricious standard of review commands judgment in support of the agency decision.

Plaintiffs' Motion For Summary Judgment makes two basic arguments. The first is that this Court should exercise subject matter jurisdiction over the decision by the Department of Homeland Security ("DHS") to revoke the non-immigrant worker petition of Adrian Lepedeanu.

Plaintiffs first argue that the agency's revocation was not a "discretionary" decision, but rather a "legal determination." As set forth below, this argument ignores the plain discretionary language in the applicable statute and regulations, as well as the manner in which the agency actually reached its decision. Plaintiffs also argue that the jurisdiction stripping provisions of 8 U.S.C. §1252(a)(2)(B)(ii) only apply to agency decisions in the context of removal. While there are federal courts who have adopted that view, the better and more current view is to the contrary.

On the substance, Plaintiffs argue that the Food Service Manager of one of the Plaintiffs' two McDonald's fast food franchises is a "specialty occupation" as defined by the applicable statutes and regulations. The thrust of Plaintiffs' argument is that Mr. Lepedeanu is highly educated, skilled and experienced in the fast food industry specifically and the culinary industry generally. Be that as it may, the focus on Mr. Lepedeanu's qualifications is misplaced; rather the statutory and regulatory focus must be on the requirements of the position. As discussed below, there was plenty of evidence, even from Plaintiff's own experts, that the entrance requirement for the Food Service Manager position at issue did not require a baccalaureate degree or its equivalent.

1. <u>This Court Lacks Subject Matter Jurisdiction Over This Dispute</u>

As discussed in Defendant's Memorandum in Support of Motion for Summary Judgment, this Court lacks subject matter jurisdiction over Plaintiffs' claims, pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii).

The discretionary power to grant or deny an H-1B visa application is vested solely in the hands of the executive branch by 8 U.S.C. § 1184(a)(1). In providing, "the admission... of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General

by regulations *may* prescribe," (emphasis supplied), Congress stated its intention to vest this power solely in the discretion of the executive branch. Moreover, the applicable regulations provide that, as to the nonimmigrant visa petition at issue, the agency "may revoke a petition at any time. . . ." 8 C.F.R. §214.2(h)(11)(ii)(B). See Haig v. Agee, 453 U.S. 280, 294 (1981) ("'may' expressly recognizes substantial discretion"); Crockett Telephone v. F.C.C., 963 F.2d 1564, 1570 (D.C. Cir. 1992), citing International Union v. Dole, 919 F.2d 753, 756 (D.C. Cir. 1990) ("'may' confers discretion, while 'shall' imposes an obligation to act").

Without much explanation, Plaintiffs maintain that the revocation of a nonimmigrant visa petition is a "legal determination," and not an exercise of discretion. They then cite a series of cases involving disputes about statutory eligibility (in the immigration context). These cases are readily distinguishable because they deal with statutory eligibility as opposed to the discretionary determination made pursuant to regulations regarding whether a particular position is a "specialty occupation."

Plaintiffs agree that the First Circuit has recently held that 8 U.S.C. §1252 strips jurisdiction of decisions committed to the agency's discretion. But Plaintiff's argue that decisions of "objective facts . . . are generally reviewable." Two of the cases cited by the Plaintiffs, Bernal-Vallejo v. INS and Goncalves v. Reno, address statutory eligibility, which inherently is not a discretionary determination. See Bernal-Vallejo v. INS, 195 F.3d 56, 60-61 (1st Cir. 1999) (statutory eligibility based on applicant's physical presence in the United States for a continuous period of at least seven years is not a discretionary decision, but a factual determination); Goncalves v. Reno, 144 F.3d 110, 125 (1st Cir. 1998) ("the decision whether an alien is eligible to be considered for a particular discretionary form of relief is a statutory

3

question separate from the discretionary component of the administrative decision"). In contrast, in the present case, Congress expressly conferred regulatory discretionary power to the executive branch under 8 U.S.C. §1184.

Nowhere do Plaintiffs submit any analysis of whether the agency's determination of whether a particular position is a "specialty occupation" is a discretionary one. As noted, that determination is not purely mechanistic or formulaic. Rather, it relies on analysis of a series of discretionary factors, such as determining the complexity of the duties.

To be sure, as to Plaintiff's second jurisdictional argument, there are decisions, and Plaintiffs have cited to them,[1] in which courts have considered this particular jurisdictional issue, holding that jurisdictions exists because 8 U.S.C. §1252 is entitled "Judicial Review of Orders of Removal," and thus its jurisdiction stripping provisions only apply in the context of removal. This surficial reasoning does not hold up to the unambiguous text of the statute. For starters, the Supreme Court held that statutory headings and titles "are but tools available for the resolution of doubt." Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad, 331 U.S. 519, 529 (1947). Further, as recognized in El-Khader v. Monica, 366 F.3d 562 (7th Cir. 2004), there is no ambiguity in the text of § 1252, which states that no court shall have jurisdiction over any "decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii).

---

[1] One such case is Mart v. Beebe, 94 F. Supp. 2d. 1120 (D. Or. 2000). Plaintiffs' reliance on this case is flawed, in part because the case involves the temporary jurisdictional provisions of the Immigration and Nationality Act. Id. at 1121. These provisions are not the same as the permanent jurisdictional provisions at issue here, and therefore the case is inapt. Furthermore, like many of the other cases cited by Plaintiffs, the court in Mart focuses its analysis on the title of the jurisdiction-stripping statute, which is simply not relevant in the present context. Id. at 1123-1124. .

4

In sum, Congress unambiguously divested the courts of jurisdiction in disputes such as this. Therefore, the Court should dismiss this case on jurisdictional grounds.

2. Even If This Court Does Have Subject Matter Jurisdiction Over Plaintiffs' Claims, The Vast Deference Accorded The Agency In Applying Its Own Regulations Mandates A Decision In Support Of The Agency Decision.

Contrary to Plaintiffs' claims, there is ample evidence in the record to support the agency's revocation of Mr. Lepedeanu's nonimmigrant petition. Given the deferential nature of the arbitrary and capricious standard, and the fact that the agency is accorded this deference as to the application of its own regulations, this Court should rule in favor of the agency's decision.

Plaintiffs concede that a baccalaureate degree is not a requirement for the position of Food Service Manager. However, their brief really telescopes the dispute to one about whether they met their burden of showing that the equivalent of a baccalaureate degree is required for the position. As demonstrated in Defendant's Memorandum in Support of Motion for Summary Judgment, there is ample evidence on the record to support the agency's decision that the equivalent of a baccalaureate degree is not required for the position of Food Service Manager.

The Occupational Outlook Handbook, long recognized by the agency as a valid source of occupational requirements, specifically states that candidates for the Food Service Manager position are recruited from "two and four year college hospitality management programs, as well as from technical institutes and other institutions offering programs leading to associates degrees or other formal certification." A.R. at 0008 and 0315. Contrary to Plaintiffs' assertion that this provides support that the equivalent of a baccalaureate degree is required, the Handbook clearly describes a position that is often filled by persons who do not have the equivalent of a baccalaureate degree. There is no discussion in the Handbook of a training requirement for those

hires that do not possess a baccalaureate degree, in order that they achieve the equivalent of a baccalaureate degree. Similarly, Plaintiffs offered no conclusive evidence that all previous employees in the proffered position had obtained a baccalaureate degree or its equivalent. Furthermore, there is no evidence that one such employee, Mrs. Yee, had the equivalent of a baccalaureate degree. Plaintiffs submitted Mrs. Yee's resume, but did not submit any further information, required by the regulations,[2] to establish that she has the equivalent of a baccalaureate degree.

Notably, the expert opinions submitted by Professor and Stefanelli, on behalf of Plaintiffs, do not establish that the equivalent of a baccalaureate degree is necessary for the position of Food Service Manager. Professor Stefanelli specifically stated that McDonald's and other similarly situated companies often hire Food Service Managers with less than a baccalaureate degree, and then those employees are "groomed" in the position. A.R. 0043. Stefanelli's concession that companies often hire Food Service Managers without a baccalaureate degree and then groom them clearly demonstrates that these Food Service Managers do not have the equivalent of a baccalaureate degree at the time of *entry* into that position. This is an

---

[2] 8 C.F.R. §214.2(h)(4)(iii)(D)(5)(i)-(v):

(i) Recognition of expertise in the specialty occupation by at least two recognized authorities in the same specialty occupation;
(ii) Membership in a recognized foreign or United States association or society in the specialty occupation;
(iii) Published material by or about the alien in professional publications, trade journals, books or major newspapers;
(iv) Licensure or registration to practice the specialty occupation in a foreign country; or
(v) Achievements which a recognized authority has determined to be significant contributions to the field of the specialty occupation.

6

important distinction, because the regulations require that a baccalaureate degree, or its equivalent, be a minimum requirement for *entry* into the proffered position. 8 C.F.R. §214.2(h)(iii)(A). Stefanelli's opinion describes a position that does not meet the specialty occupation definition because it is initially filled by an employee with less than a baccalaureate degree, even though that person may eventually earn the equivalent of a baccalaureate degree as he is groomed in that position.

In addition to failing to focus on the job requirements upon *entry* to the position, Plaintiffs also stress Mr. Lepedeanu's achievements while ignoring the more relevant requirements of the position. For example, Plaintiffs distinguish the present case from Shanti merely by pointing out the fact that the plaintiff in Shanti had significantly less experience in the proffered position than does Lepedeanu. However, the agency revoked Lepedeanu's nonimmigrant petition not because Lepedeanu does not possess the equivalent of a baccalaureate degree, but because a baccalaureate degree or its equivalent is not the minimum requirement for entry into the Food Service Manager position.

Plaintiffs rely heavily on a case that pre-dated the "specialty occupation" analysis. Hong Kong T.V. Video Program, Inc. v. Ilchert, 685 F.Supp. 712 (N.D. Cal. 1988). That case was decided under the "profession" rubric, related to but different from the "specialty occupation" rubric. Even if the two could be analogized, the position at issue in Hong Kong T.V. was that of president and chief executive officer for the largest Asian language video cassette distributor in the United States, employing over 70 workers and grossing over $8 million in the 1985 time frame. 685 F. Supp. at 714. Though a very fact-specific inquiry, the position in Hong Kong T.V. required a significantly specialized set of skills and responsibilities (including making high level

decisions involving technical, legal and fiscal matters, capital improvements and copyright infringement, id.), much more so than the Food Service Manager in the present case. Furthermore, the plaintiff in Hong Kong T.V. was supported by uncontroverted expert opinion that stated, among other things, that the beneficiary's record was "*far* more superior and impressive than the records...ordinarily granted graduate credit" and that the beneficiary was qualified to "*teach* university level courses in Business Law, International Business, and Marketing Management." Id. at 714-715.

In contrast, the Food Service Manager position is much less complex, and Plaintiffs' own expert concedes that a baccalaureate degree or its equivalent is not needed for *entry* into that position. That opinion is entirely consistent with the authoritative Occupational Outlook Handbook.

While the record contains scattered support that the equivalent of a baccalaureate degree is required for entry into the Food Service Position, this evidence does not outweigh the substantial support in the record for the agency's decision. More importantly, given the vast deference accorded to the Attorney General on this matter, this Court is obligated to hold in Defendant's favor.

3. There Has Been No Post Hoc Rationalization By The Agency.

The agency, according to its procedures, withdrew and reissued its decision upholding the revocation of Mr. Lepedeanu's nonimmigrant petition. Plaintiffs were invited to submit additional materials, which they chose not to do. There was no consideration by the agency of any new material. Thus there was not, nor could there have been, the "post-hoc rationalization" decried in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971). The practice

criticized in Overton Park was the submission of affidavits in the lawsuit that sought to justify agency decisionmaking. Id. at 419. There is nothing even remotely similar to that here. Rather, the agency reissued its decision, apparently for the primary purpose of including a reference to the fact that the initial decision to approve Mr. Lepedeanu's non-immigrant petition was "gross error."

## Conclusion

This Court should decline to exercise jurisdiction over this dispute. In the event that the Court does exercise jurisdiction, the concessions by Plaintiffs' own expert, combined with other evidence in the record, compel a finding upholding the agency decision.

Respectfully submitted,

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY

By its attorney,

MICHAEL J. SULLIVAN
United States Attorney

8/2/04    By: /s/ Jeremy M. Sternberg

Jeremy M. Sternberg
Assistant U.S. Attorney
U. S. Attorney's Office
J. Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3142

Certificate of Service

I certify that I caused a copy of this Opposition to be sent by US Mail to Maureen O'Sullivan, Kaplan, O'Sullivan & Friedman, 10 Winthrop Sq., Boston, MA 02110.

8/2/04    /s/ Jeremy M. Sternberg

Jeremy M. Sternberg
Assistant U.S. Attorney