UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON, MASSACHUSETTS

| | |
|---|---|
| THE M.D. MANAGEMENT CO., LLC, (Petitioner) ) <br> ADRIAN E. LEPEDEANU, (Beneficiary, ) ) <br> MARIANA LEPEDEANU (Spouse,) ) <br> R. L. (Child, ), ) <br> Plaintiffs ) <br> ) <br> vs. ) <br> ) <br> DEPARTMENT OF HOMELAND SECURITY, ) <br> U.S. CITIZENSHIP & IMMIGRATION SERVICES, ) <br> JOHN ASHCROFT, United States Attorney General, ) <br> TOM RIDGE, Secretary, DHS, and ) <br> PAUL E. NOVAK, Director, Vermont Service Center, ) <br> Defendants ) <br> ) | Civil Action No. <br> 04 10499 RWZ |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs raise the following arguments in response to the Defendants motion.

I. **The Second Circuit has just issued a decision finding that the jurisdictional limits cited by the Defendants do not divest the district court of jurisdiction to review revocation of an immigrant visa petition.**

In Firstland International, Inc and Shao Zeng Chai v. U.S. Immigration and Naturalization Service, ___ F.3d ___, 2004 U.S. App. LEXIS 15851 (Decided Aug. 2, 2004), the court considered the revocation of an employment-based immigrant visa petition. While the facts are slightly different, the jurisdictional issue is the same. In Firstland International, the Government argued that the court lacked subject matter jurisdiction under 8 USC 1252 (a)(2)(B), the same jurisdictional limitation which the Government Defendants cite in the the instant case.

Moreover, the Second Circuit considered and rejected two of the same arguments which the Defendants stress in this case: specifically, that the use of the word "may" in the revocation provision makes it a discretionary determination for which there is no judicial review and that the revocation provision is within the same subchapter as the jurisdictional limitations of section 1252 and therefore not subject to judicial review.

The Second Circuit noted that the revocation provision for immigrant visa petitions (8 USC 1155) has specific notice requirements which were not met in the case of Firstland International. For this reason, the court concluded that:

> Because the INS had no statutory basis for its revocation decision, that decision was not "specified...to be in the discretion of the Attorney General," and Section 1252 did not divest the District Court of jurisdiction to hear plaintiffs' challenge to revocation.

Firstland International Inc, slip opinion at 8. Thus the Second Circuit reached the opposite conclusion of the Seventh Circuit in El-Khader v. Monica, 366 F. 3d 562 (7th Cir. 2004.) However, it does not appear that the notice issue was raised in the El-Khader case.

The notice provision cited by the Second Circuit in Firstland International is codified in the revocation provision for immigrant visa petitions contained in 8 USC 1155. There is no such notice requirement in the regulatory revocation provision for nonimmigrant visa petitions such as the one in the instant case. For that matter there is no statutory revocation provision at all in 8 USC 1184, the section which governs the admission of nonimmigrants (and which is cited by the Defendants for the proposition that it is immune to review.) The revocation provision appears in

the regulations only. This is further reason why the revocation decision in the instant case is not immune to judicial review under the restrictions of 8 USC 1252.

II. **The Plaintiffs do NOT conceed that a bachelors degree is not required for this position.**

The Defendants mistakenly state this in their Opposition (p.5.) In fact, Plaintiffs' position is that a bachelors degree or equivalent is required for this position of Food Service Manager. This issue is briefed in Plaintiffs' Motion for Summary Judgement.

The point is that not all Food Service Manager jobs are equal. The title is broad and covers a broad range of jobs which vary in responsibility, complexity and scale. The Food Service Manager in the instant case is a complex, demanding job which requires a bachelors degree or equivalent. A bachelors degree "or equivalent" is the statutory standard for specialty occupation. 8 USC 1184 (i)(B).

III. **Even assuming arguendo that Mrs. Yee does not have the equivalent of a bachelors degree, this is not sufficient reason to revoke the H-1B petition in this case.**

The regulations clearly describe four alternative means of establishing that a job is a speciality occupation. 8 CFR 214.2 (h)(ii)(A). In short this requires proving that a job requires either a bachelors degree or its equivalent.

Proof that the employer "normally" requires a degree or its equivalent for the position is only one of the four alternatives in 8 CFR 214.2 (h)(ii)(A) and Mrs. Yee is only one of the

previous managers. Mrs. Yee's credentials are only one of many factors that show that M.D. Management "normally" requires a degree or its equivalent. Defendants repeatedly state in their brief that Mrs. Yee's lack of degree is the reason for revocation. If this is so, the decision to revoke is arbitrary and capricious.

Mrs. Yee's credentials are only relevant to show what the employer "normally" requires for the position. In otherwords, this test for specialty occupation requires the employer to show its normal business practice of hiring for the particular position. Mrs. Yee and her husband are the owners. As such it is not reasonable that she would have her own credentials evaluated. Nor is it reasonable to expect that they would retain copies of the bachelors degrees of previous managers.

Mrs. Yee is not the individual seeking H-1B classification. That is Mr. Adrian Lepedeanu. Mr. Lepedeanu has the equivalent of a bachelors degree in Restaurant ,Culinary and Management. This is confirmed by a professional credential evaluation (A.R. 0141) which has not been challenged by the Defendants.

The Defendants cite a portion of the regulations which is taken out of context. (Def. Motion for Summary Judgement at 15 citing 8 CFR 214.2 (h)(4)(iii)(D)(i)-(v).) This section of the regulations lists five supplemental criteria one of which the "alien" (H-1B applicant) must satisfy if using the three-for-one rule rather than an evaluation. This applies to the alien beneficiary if he or she does not have a professional credential evaluation. Thus it is not applicable here. Moreover, a petitioning employer is not required to submit credential

evaluations for the owners or previous employees.

This regulation is not dispositive of this case where the alien beneficiary, Mr. Lepedeanu has an undisputed credential evaluation from a recognized authority. The fact that this subsection of the regulations was never cited by CIS in the notice of intent to revoke (A.R. at 0015) or in either the initial AAU decision (A.R. at 0002-0010) or the rewritten decision (A.R. at 0309-0319) is proof that this subsection of the regulations is not controlling. Any attempt to claim that it is would be impermissible post hoc rationalization (previously briefed)

IV.  **" Food Service Manger" is a broad title which encompasses an array of jobs which are differentiated by their scale and complexity.**

The Food Service Manager in the instant case is distinguished by the scale of the operation (95 employees), the volume of business ($2.46 million dollars) and the complexity of the duties. (See description of numerous complex reports required on everything from employee performance, quality control, inventory and financial transactions, A.R. 0019-0021). Basic logic, common sense, and the evidence in the record compel the conclusion that this is necessarily a more complex job than that in Shanti where there were only three employees and an annual income of $185,000.

This position is one of tremendous responsibility over dozens of staff members, including first line and mid level managers, and over a tremendous amount of money, literally millions of dollars. What prudent employer would entrust a job of this complexity to someone without a

bachelors degree or equivalent?

The Plaintiffs have stressed from the outset that this is a senior position, high up in the hierarchy of employees within the corporation. They previously submitted an organizational chart (A.R. at 0038) which shows that this Food Service Manager manages layers of lower level managers. The Plaintiffs' response to the Notice of Intent to deny states:

> The position involved is the senior most position of Food Service Manager/General Manger. It is not the position of Shift Manager or Shift Supervisor or Management Trainee. The job responsibilities and requirements for entry level in each of these individual positions are significantly different.

(A.R. at 0118)

This is consistent with the expert opinion of Dean Hadgis of the School of Hospitality Management. He attaches a similar chart (A.R. at 0041) and explains that the position of Food Service Manager in this case is akin to General Manager, four tiers above the Management Trainee, and above the Assistant Managers and Shift Mangers.

Similarly, the second expert, Professor Stefanetti, Chair of the Department of Food and Beverage Management at the University of Nevada, explains that he has reviewed the notice of intent to deny and states why he disagrees with the conclusion. Specifically he states:

> I feel that the evaluator [CIS] is focusing on the day to day tasks performed by a shift manager. He or she is not considering the difference between this type of supervisor and a general manager who must have a higher order skills in order to fulfill those job requirements.

A.R. at 0043.

Professor Sefanetti explains how people with two year degrees who "have the aptitude to move up to general manager" are tapped by the company to undergo additional education or training . (A.R. at 0043) This does not mean that those with only a two year degree are hired directly into the position of Food Service or General Manager. Rather they are hired at a lower level and promoted to Food Service/General Manager when they have the equivalent of a four year degree.

In its attempt to discredit the substantial evidence produced by the Plaintiffs, the Defendants rely on a single source, the Occupational Outlook Handbook. The Government's reliance on this publication, to the exclusion of all other evidence which attests to the professional nature of <u>this particular position</u> at issue is completely unfounded and contrary to the applicable law and regulations.

The Occupational Outlook Handbook was produced in the Bureau of Labor Statistics and is intended to serve as a source of career information to job seekers. The OOH covers <u>over 100 million</u> jobs which it groups into approximately 250 occupational clusters based on certain shared characteristics. For obvious reasons, the OOH cannot and does not purport to contain a description for every job which comprises today's workforce. Instead, each entry in the OOH explains the typical responsibilities and the typical job requirements for an occupational family.

It is critical to note that the occupational families and requirements stated in the OOH do

not differentiate between job levels, the types and sizes of employers, or the extent of its operations. (See attached except from the OOH, Exhibit AA)

In its introductory pages the OOH contains a specific disclaimer which reads as follows:

> The occupational information contained in the Handbook presents a general, composite description of jobs and **cannot be expected to reflect work situations in specific establishments or localities**. The Handbook, therefore, is not intended and should not be used as a guide for determining wages, [...] or formal evaluation systems.

(Exhibit AA at ii, 2002-03 Edition)

The 1994-1995 Edition of the OOH, in the section entitled "Keys to Understanding What's in the Handbook" contains the following explanation:

> Responsibilities of workers in the same occupation usually vary by employer, industry and size of the firm. In small organizations, for example, workers generally perform a wide range of duties because resources for specialization simply do not exist. In addition, **most occupations have several levels of skills and responsibility**

(See page 1, Exhibit AA, 1994-1995 Edition)

The OOH is a career resource and not an authority on what jobs qualify as speciality occupations as defined in Section 214 of the INA and the implementing regulations. The OOH job classifications contain broad generalizations and are silent about various job aspects which are key to the determination of whether or not a given position is a professional one for purpose

of securing the H-1B nonimmigrant status.

Specifically, the regulations at 8 C.F.R. Section 214.2(h)(4)(iii)(A) provide that the petitioner may establish that a given position is a specialty occupation by demonstrating that it is so specialized, or complex and unique that it usually requires a bachelor's degree or its equivalent or that the degree requirement is common to the industry "in parallel positions among similar organizations". This is another one of the four alternative test for specialty occupation. In the alternative, the employer can meets its burden of proof on this issue by showing that it normally requires a degree or its equivalent for the position, even if this requirement exceeds the industry standard. This determination cannot be made on the basis of the information contained in the OOH because it groups numerous jobs into occupational classifications and generalizes about the typical job duties and requirements of the class without regard to the type of employer, nature of its business, size of its operation, levels of skills and responsibility required for a particular position or other factors which may account for significant variations in the job duties, level of responsibility and, consequently, the required education and experience.

In contrast, the OOH's broad occupational classification embraces First Line Managers, mid-level management and General Managers. In its introductory pages, the OOH specifically cautions that most occupations will have different job levels and different levels of responsibility. It is not surprising that the OOH states that most of the positions classified as a Food Service Manager require a four year college degree in the specialty but some do not. This does not imply that employers have a mere preference for a degree or that some employers require a degree and some do not for comparable positions. Instead different educational requirements

correspond to different job levels and different conditions of employment. ."

The Defendant's reliance on the general OOH statement to outweigh the specific evidence presented completely ignores the parameters defined by the regulations which call for comparison to "parallel positions among similar organizations" and the fact that the regulations specifically allow degree equivalencies.

In addition, unlike the INA and the H-1B regulation which specifically provide that positions can also qualify as a "speciality occupation" if the equivalent of a degree is required, the OOH considers formal education only and does not address degree equivalencies. Therefore, the fact that in a very tight market an employer is compelled to depart from the norm by underhiring and training an employee does not undermine the professional status of the job.

While some managerial positions in food services may have lower educational requirements, the Plaintiffs submitted proof in the form of job advertisements, expert evaluations, and sample work product as proof that a specialized degree or equivalent is absolutely required for this position. This evidence is not contradicted or rebutted by reference to the general educational requirements stated in the OOH under the broad classification of Food Service Manager.

Moreover, the Defendants ignore the fact that the regulations specifically permit the employer to establish the professional nature of the position even if the employer's degree requirement exceeds the industry standard for similar positions if the particular position complex

er unique or of employer's past hiring practice evidences that it normally requires a degree or its equivalent for this position. Unless contradicted by probative evidence, the agency should not substitute its own judgement for the opinions of the experts and the employer's attestations regarding this particular positions.

## CONCLUSION

Therefore, for the reasons mentioned here and detailed in the Plaintiffs' moiton for Summary Judgement they respectfully request summary judgement to:

a. Grant M.D. Management's H-1B Petition as of September 6, 2002, the date is was originally granted;
b. Restore Mr. Adrian Lepedeanu to H-1B status as of September 6, 2002;
c. Restore Mrs. Mariana Lepedeanu and their child (R.L.) to H-4 status as of September 6, 2002.

Respectfully submitted,

8/4/04
DATE

Maureen O'Sullivan
Counsel for Plaintiffs
Kaplan, O'Sullivan & Friedman
10 Winthrop Square
Boston, MA 02110
617-482-4500

## CERTIFICATE OF SERVICE

I, Maureen O'Sullivan, hereby certify that a copy of the PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT in this case were hand delivered or sent by certified mail/federal express to:

> Jeremy Sternberg
> U.S. Attorney's Office
> U.S. Courthouse
> Suite 9200
> 1 Courthouse Way
> Boston, MA 02210

This 4/4 day of August, 2004

Maureen O'Sullivan
Counsel for Plaintiffs
Kaplan, O'Sullivan & Friedman
10 Winthrop Square
Boston, MA 02110
617-482-4500